IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AUDREY ROBINSON BENAMARA          )
          Plaintiff,              )
                                  )
     v.                           )  Civil Action No. 05-1433
                                  )
PLAN ADMINISTRATORS OF MELLON     )
LONG TERM DISABILITY PLAN,        )
MELLON LONG TERM DISABILITY       )
PLAN, and MELLON FINANCIAL        )
CORPORATION,                      )
          Defendants.             )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                              January 12, 2007

          This is an action brought under the Employee Retirement

Income Security Act, 29 U.S.C.A. § 1001 et seq.  Plaintiff,

Audrey Robinson Benamara, alleges that defendants, Plan

Administrators of Mellon Long Term Disability Plan, Mellon Long

Term Disability Plan, and Mellon Financial Corporation,

improperly denied her benefits under the Mellon Long Term

Disability Plan ("Plan").  Plaintiff asserts that the benefits

determination process was tainted by conflicts of interest and

procedural anomalies, and that the medical evidence proves that

she was completely disabled.  Defendants contend that there were

no irregularities in the process, and that benefits were properly

denied because plaintiff could not prove that she was disabled

from any occupation.  Plaintiff seeks recovery of past due

benefits, equitable relief, and costs and fees.

Both parties have filed motions for summary judgment [doc. nos. 27, 29]. In their motion, defendants argue that plaintiff has failed to demonstrate that the Plan's determination that she was not entitled to benefits was arbitrary and capricious. In her motion, plaintiff contends that a heightened standard of review should apply due to the alleged conflicts of interest and procedural anomalies. Under the heightened standard, plaintiff argues that the Plan's decision was arbitrary and capricious.

For the reasons that follow, we will grant defendants' motion and deny plaintiff's motion.

## I.    FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are not in dispute. Other facts may be discussed in context throughout this memorandum.

Plaintiff began working for Mellon Bank in 1978 as a Control Analyst. She is a qualified participant in the Plan. The Corporate Benefits Committee is the Administrator of the Plan. The day to day operations of the Plan are managed by the Plan Manager, who at all relevant times was Sheila Miller. According to the Plan, the CBC and the Plan Manager "shall act as trier of facts and thereby shall have the power to determine facts and to apply the same to the claim."

2

Plaintiff received short term disability benefits due to severe abdominal pain and diarrhea from January 1, 2002 to July 1, 2002. Plaintiff then received tier-one long term disability benefits under the Plan starting on July 2, 2002. Under the Plan, an employee may receive tier-one benefits for up to two years if he is unable "to perform any and every duty pertaining to his employment."

To receive long term disability benefits for longer than two years, an employee must prove that he is unable "to engage in any occupation or perform any work for compensation or profit for which he is or may become reasonably fitted by education, training, or experience." The tier-two test is more stringent than the tier-one test. In December of 2003, with plaintiff's tier-one benefits set to expire in July of 2004, CIGNA[1] contacted plaintiff to begin the process of determining whether she qualified for continued benefits under the tier-two test.

In response to CIGNA's inquiry, plaintiff provided a completed Disability Questionnaire and the names of her two treating physicians, Dr. Bazron and Dr. Berzon. She claimed that she could not perform any occupation due to diarrhea, severe abdominal pain, lack of concentration and drowsiness caused by medication, depression, and high blood pressure, which causes

---

[1]     The Plan retained CIGNA to provide ministerial services, such an information collection, on an as-requested basis.

headaches, fatigue, and difficulty eating. Her physicians sent their office notes in response to CIGNA's requests.

By letter dated October 27, 2004, the Plan Manager notified plaintiff that her disability benefits were terminated effective October 15, 2004 because the medical information submitted failed to establish that she suffered from a total disability under the tier-two test as of July 2, 2004. Plaintiff, through counsel, appealed this decision. With the appeal, plaintiff submitted almost 400 pages of documentation in support of her medical conditions. That information was provided to an independent medical examination coordinator, CorVel, who engaged two doctors (a psychiatrist and a pain management specialist) to review and opine on plaintiff's medical records and conditions. Both doctors concluded that while plaintiff suffered from health conditions, she had not established that she was unable to perform any occupation under the tier-two test.

When the CBC met to discuss and render a decision on plaintiff's appeal, the sole question before them was whether plaintiff's depressive mood and chronic conditions prevented her from engaging in any occupation. In a July 20, 2005 letter to plaintiff's counsel, the CBC concluded that, based on a review of the evidence, including the evidence submitted by plaintiff's counsel, the reports from the CorVel doctors, and the Plan provisions, plaintiff did not qualify for tier-two benefits.

4

## II.    LEGAL AUTHORITY

### A.    Summary Judgment Standard

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of

record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit").

The non-moving party has the burden of producing evidence to establish each element of her claim. Celotex, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. Anderson, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of

6

fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec., 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor.

### B. ERISA Standards

This action, to reinstate long term disability benefits under the Plan, is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001 et seq. Where, a plan administrator has the discretionary power to construe the terms of a plan or to determine who is eligible for benefits, the court will review the administrator's decision according to an "arbitrary and capricious" standard. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 119 (3d Cir. 1990). "Where, as here, a Plan gives the decision maker the power to make factual determinations, these factual findings are given similar deference upon judicial review. Luby v. Teamsters Health,

Welfare, and Pension Trust Funds, 944 F.2d 1176, 1181-84 (3d Cir. 1991).

On summary judgment, under the arbitrary and capricious standard, we must decide whether there is any genuine factual dispute as to whether the denial of benefits was irrational, unsupported, or clearly erroneous.   Shiffler v. Equitable Life Assurance Soc'y,   838 F.2d 78, 83 (3d Cir. 1988)(citations omitted).   Put another way, to   oppose the summary judgment motion, a plaintiff must successfully demonstrate that the evidence raises a genuine factual issue as to whether she was so clearly entitled to the benefits she sought that the denial was "clear error" or "not rational.   Id.

When considering whether a decision was arbitrary and capricious, we may only consider the evidence that was before the plan administrator at the time of the final denial.   Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 48 n.8 (3d Cir. 1993).   We may not substitute our judgment for that of the decision maker. Id. at 45.

A heightened standard of review applies where the decision maker is operating under a conflict of interest, or where there are procedural anomalies that lead a court to view the decision with skepticism.   Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 253-54 (3d Cir. 2004); Pinto v. Reliance Standard Life Ins.   Co., 214 F.3d 377, 393-94 (3d Cir. 2000).   If such

8

irregularities exist, a court may adjust the arbitrary and capricious standard using a sliding scale method, intensifying the degree of scrutiny to match the degree of the impropriety. If a heightened arbitrary and capricious standard applies, the court is "deferential, but not absolutely deferential.... [and looks] not only at the result - whether it is supported by reason - but at the process by which the result was reached." Pinto, 214 F.3d at 393.

## III. DISCUSSION

Plaintiff claims that a heightened standard of review should be applied to this case due to a conflict of interest and procedural anomalies in the administration of her benefits determination and appeal. We disagree, but find that even were we to apply the heightened standard of review, the result would be the same.

First, we find that there was no conflict of interest. The Court of Appeals for the Third Circuit has ruled that the fact that an employer has established the plan, ensured its liquidity, and created an internal benefits committee with discretion to interpret the plan's provisions and administer benefits does not create an inherent conflict of interest. Pinto, 214 F.3d at 383. Plaintiff has presented no special facts unique to this case warranting our departure from that rule.

9

Second, we have considered each of plaintiff's claims of procedural improprieties, which include allegations that defendants refused to provide her documents, based their decision on an incomplete record, allowed the Plan Manager (who made the initial decision to deny benefits) to control the CBC's review process, hired the wrong specialists to review her charts, and completely discounted her treating physicians' opinions. According to plaintiff, these anomalies warrant a heightened standard of review, to include a review of the appeal process procedure itself. Defendants contend that there were no improprieties in the process. Upon review of the circumstances of this case, we are not convinced that plaintiff has proven that the alleged improprieties existed.

For instance, plaintiff claims that defendants hired the wrong specialists to conduct chart reviews. However, CorVel selected specialists in the field of pain management (the same specialty as one of plaintiff's treating doctors) and psychiatry (because plaintiff was claiming to be disabled due to depression, even though plaintiff had not been treated by a psychiatrist for some time). Just as plaintiff's treating pain management specialist could review test results, Emergency Room reports, and notes from gastrointestinal specialists, so too could the independent CorVel pain management specialist. We find no impropriety in this. Similarly, we see no impropriety in the

appeal process due to CorVel assembling a record of relevant documents for the independent chart reviewers. Although plaintiff claims, without support, that this was done in order to hide evidence of her conditions, defendants have submitted evidence showing that it was done in order to place only documents relevant to a tier-two determination before the doctors.

Plaintiff has similarly provided no proof that the Plan Manager manipulated the appeal process in order to obtain an affirmance of her initial denial. Rather, the evidence shows that the Plan Manager sought independent evaluations where appropriate, acted as an administrator in coordinating the appeals process with the legal department, and played no part in the CBC's decision on plaintiff's claim.

We find no evidence of procedural anomalies that lead us to view the CBC's decision with skepticism. However, as noted above, a decision on this issue is not outcome determinative. Upon reviewing the process itself, we find no evidence of bias, inconsistencies, selectivity in evidence review, or attempts to ensure a denial of benefits. Rather, plaintiff's benefits were extended from July 2, 2004, to October 15, 2004, while an initial decision was reached regarding the tier-two test. Had defendants been seeking to end plaintiff's benefits regardless of her condition, they could have done so on her tier-one expiration

11

date.   Furthermore, even were we to review the CBC's ultimate decision under the heightened standard we still could not say that defendants acted irrationally, arbitrarily or capriciously, or without support, or that plaintiff had proven that she was clearly entitled to tier-two benefits.

Although the CorVel doctors questioned the severity of her conditions, no one has questioned that plaintiff has health problems.  However, the question that the CBC decided, and that we must review, is not whether plaintiff was sick, but whether plaintiff was unable to engage in any occupation.  The CBC determined that plaintiff failed to meet her burden of proof on this issue.  There is no factual dispute as to whether the denial of benefits was irrational, unsupported, clearly erroneous, or the result of a biased process.  Rather, there is substantial evidence supporting the CBC's decision.  We cannot substitute our judgment or say that the decision was arbitrary or capricious, under any standard of review.

IV.   CONCLUSION

For the foregoing reasons, we will grant defendants' motion for summary judgment.  An appropriate order follows.

12

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AUDREY ROBINSON BENAMARA          )
          Plaintiff,              )
                                  )
     v.                           )     Civil Action No. 05-1433
                                  )
PLAN ADMINISTRATORS OF MELLON     )
LONG TERM DISABILITY PLAN,        )
MELLON LONG TERM DISABILITY       )
PLAN, and MELLON FINANCIAL        )
CORPORATION,                      )
          Defendants.             )

## ORDER

AND NOW, this 12th day of January, 2007, IT IS HEREBY
ORDERED that defendants' motion for summary judgment [doc. no.
27] is GRANTED.  Plaintiff's motion for summary judgment [doc.
no. 29] is DENIED.

     The Clerk of Court is directed to mark this case closed.

                              BY THE COURT:


                              _____, J.

cc:  All Counsel of Record

13